Bruce Sloan v. Commissioner.
Sloan v. Commissioner
Docket No. 46993.
United States Tax Court
T.C. Memo 1956-36; 1956 Tax Ct. Memo LEXIS 260; 15 T.C.M. (CCH) 161; T.C.M. (RIA) 56036; February 16, 1956
*260 Franklin P. Hays, Esq., Kentucky Home Life Building, Louisville, Ky., and William A. MacKenzie, Jr., Esq., for the petitioner. John C. Calhoun, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves a deficiency in income tax for the year 1946 in the amount of $22,770.15. The issues presented are (1) whether petitioner is entitled to deductions for business expenses of his lumber and timber business in addition to those allowed by the respondent in determining the deficiency; (2) whether petitioner's closing inventory for his lumber and timber business was less than the amount reported and allowed by the respondent; and (3) whether petitioner was engaged in the trade or business of operating a dog kennel during the years 1946, 1947, and 1948 and, if so, the amounts deductible as expenses of such operation. The original and amended petitions set forth approximately 46 assignments of error. The years 1947 and 1948 are involved by reason of alleged operating loss carry-backs. Findings of Fact Petitioner, an individual, resided in Albany, Kentucky, during the years 1946 to 1948, inclusive. He filed his income tax returns *261 with the collector of internal revenue for the district of Kentucky. Petitioner became engaged in the timber and lumber business in 1946 and continued to operate the business during the years in question. Prior to that time he held various public offices and had been in the taxi, bus, and automobile businesses. In 1946, 1947, and 1948 petitioner was also president of Sloan Coal Company (hereinafter referred to as the coal company), a corporation in which he owned 47 per cent of the capital stock. The operations of the lumber business and those of the coal company were carried on in one office maintained in Albany, Kentucky. The petitioner did not maintain books or records of the operations of his business activities from which he reported income during the years involved. Petitioner devoted the first six months of 1946 to purchasing and selling tracts of standing timber to Frankfort Distilleries. In mid-1946 petitioner contracted with the United Distillers of America to furnish them with white oak bolts and logs used in the construction of barrel staves. The bolts and logs were to be delivered to United Distillers at Jamestown, Tennessee. To fulfill the contract petitioner purchased *262 two saw mills. Late in 1946 United Distrillers stopped buying bolts and logs and petitioner purchased a stave and heading mill to saw up the white oak he had on hand. He attempted to dispose of this lumber, heading, and staves in 1947 and 1948. During the years involved petitioner employed a secretary, who worked in the joint office in Albany. She was familiar with the operations of the petitioner's lumber and timber business and the coal company; she prepared checks and generally handled the pocketbook of the coal company. The latter company had many cash transactions. The cash receipts were kept in a pocketbook. A small memorandum book, called a cash book, was kept, in which were noted additions to and withdrawals from the pocketbook, and also any receipts or disbursements of the coal company by check. Receipts by check would sometimes be deposited in the account of the coal company at the Citizens Bank of Albany. Cash receipts were deposited or kept in the pocketbook. Many cash disbursements for petitioner's individual business were made from the pocketbook. Notations in the cash book were made by the petitioner and his secretary. Petitioner maintained a personal account in *263 his name at the Citizens Bank of Albany and at other banks in the vicinity. The coal company and the Sloan Lumber Company had accounts at the Citizens Bank of Albany. If petitioner wrote a check on his personal account and the funds of the particular account were insufficient to cover the check the bank would not dishonor the check but would cover it with funds from the Sloan Coal account, if sufficient. It was also the practice of the bank to cover coal company checks with funds from petitioner's accounts. The inventory figures shown on the petitioner's returns for each of the years 1946, 1947, and 1948 include lumber, bolts, staves, headings, logs, and wood. The returns did not indicate whether cost or market, whichever is lower, was used to arrive at the inventory figures. Because of the manner in which petitioner operated his lumber and timber business, there was no way by which he could have known what the costs of his inventory components were. Petitioner kept his inventory of the lumber and timber business in a field warehouse located near Albany and owned by the St. Louis Terminal Warehouse Company. He maintained no records of his own as to what inventory was in the field *264 warehouse. The warehouse maintained records of the quantity, quality, and valuation of each type of wood, by classification, deposited by petitioner. The records of deposits were based upon signed statements of petitioner on deposit slips that certified the price and extended valuation of wood deposited to have been true to the best of his knowledge. Each month the warehouse company presented petitioner with a statement of the amount of the headings, staves, bolts, logs, and wood in the warehouse. Petitioner did not preserve these statements. Petitioner received warehouse receipts from the warehouse company during the years in question. He used these receipts as collateral in order to obtain loans from banks. The bank would generally lend 50 per cent of the value shown on the warehouse receipts. In June, July, and August, 1949, a revenue agent made an examination of petitioner's returns for the years involved. In the absence of books and records the agent worked from petitioner's cancelled checks and the memorandum cash books of the coal company which the agent was informed contained notations bearing on petitioner's personal business activities. With respect to each bank account *265 the agent went through each cancelled check with the petitioner and his secretary, who informed him as to which checks pertained to his business affairs, and the purpose for which the check was written. The checks were allocated to each item of expense incurred in petitioner's lumber business and the checks were placed in stacks according to such allocation. Petitioner and his secretary also directed the agent as to the notations in the coal company's cash books which represented expenses of petitioner's business. The agent accepted the statements of the petitioner and his secretary and made summaries on the basis of such representations. Because the recipients of petitioner's payments for his business expenses received payments in various capacities, it was not possible to precisely allocate each payment. The cost of timber tracts was also determined by the agent from petitioner's cancelled checks and his statements. In addition to the expenses above mentioned the agent accepted petitioner's statement that he made a payment of $10,800 to Walter P. Cumnock for commissions by endorsement of a check of the Frankfort Distilleries payable to petitioner, and allowed such amount as a deduction. *266 The petitioner made expenditures in addition to the amounts allowed in connection with his timber business, exclusive of travel and entertainment expenses, of the following amounts: Year
Amount
1946
$3,481.51
1947
4,921.98
1948
7,333.24
The specific contested items, the amounts claimed on brief, and the amounts allowed as shown by the deficiency notice are set forth in the following schedule: 1946
1947
1948
Allowed Per
Allowed Per
Allowed Per
Per
Deficiency
Per
Deficiency
Per
Deficiency
Contested Items
Brief
Notice
Brief
Notice
Brief
Notice
Wages-Truckers
Transportation Cruisers
$ 61,788.62
$ 61,368.40
$35,105.10
$31,068.49
$ 7,282.96
$3,598.30
Bolts & Logs
Interest
849.37
808.12
Lease Options
1,435.00
1,440.00
1,277.00
1,137.50
Water
97.52
24.00
Freight
139.72
29.32
Materials & Repairs
2,402.16
1,456.40
8,259.17
7,895.00
819.15
270.52
Truck License
92.63
Commissions
44,429.57
42,704.91
179.32
769.32
Attorneys' Fees
711.00
662.25
Gas & Oil
1,280.05
1,384.86
Electricity
1,498.82
1,191.63
Warehouse Charges
6,029.49
4,432.50
Oil Lease Rentals
704.32
Totals
$111,945.59
$108,464.08
$47,599.46
$42,677.48
$15,634.56
$8,301.32
Difference
3,481.51
4,921.98
7,333.24
*267 On his returns for 1946, 1947, and 1948 petitioner also claimed travel and entertainment expenses in connection with his timber and lumber business in the following amounts, respectively: $1,200, $400, and $1,200. The respondent disallowed the amount of $1,200 for 1946 but allowed the amounts of $400 for 1947 and $1,200 for 1948. Petitioner expended for travel and entertainment the sum of $1,200 in each of the years 1946, 1947, and 1948, and such expenditures are ordinary and necessary business expenses. Petitioner has failed to establish that his closing inventory as of December 31, 1948, had a fair market value of less than $20,490. Petitioner incurred liabilities in connection with the operation of his timber and lumber business during the years 1946, 1947, and 1948 in the aggregate amount of $8,866.49. The payments in discharge of such liabilities were made during the years 1949 and 1950. In 1945 and 1946 the petitioner acquired eight bird dogs. Some were offspring of nationally known dogs such as "Mississippi Zeb", "Communique" and "Sports Peerless". Petitioner placed some of his dogs in care of trainers, who run dogs during the training season in Canada. One of the *268 dogs was to have been entered in the All American Derby but the dog developed into a "blinker" and the trainer returned him to the petitioner. Another dog was poisoned and a third dog suffocated in a poorly ventilated crate when it was being shipped back from Canada. It was petitioner's purpose to develop an outstanding dog from which he could profit by way of stud fees, raising and selling his offspring, or by obtaining a high price from its sale. On his return for the year 1946 the petitioner claimed a deduction of $990 as a loss incurred in the operation of his dog kennel. No income from such operation was reported. The respondent disallowed the entire amount for lack of substantiation. In his returns for the years 1947 and 1948 petitioner reported no income and claimed no deductions. Petitioner was engaged in the trade or business of operating a kennel. In the taxable year 1946 the petitioner sustained a loss from the operation of such business in the amount of $427.70, and a loss in the amount of $185 in the year 1947. Petitioner has failed to establish that he sustained any loss from the operation of the kennel in the year 1948. Opinion LEMIRE, Judge: This controversy *269 presents some aspects not usually encountered in income tax litigation. The petitioner kept no formal books or records from which his correct income could be ascertained. Petitioner maintained certain bank accounts in his personal name and that of the Sloan Lumber Company, a sole proprietorship operating a lumber and timber business. Petitioner was also the president and manager of the Sloan Coal Company, a corporation. This latter company also maintained a bank account. The petitioner's accounts and the coal company account were at times used interchangeably to cover checks where the account on which the check was drawn had insufficient funds. The coal company maintained a pocketbook in which it kept cash receipts from the sale of coal. A memorandum "cash book" was kept in connection with the pocketbook. Many cash payments were made from the pocketbook for expenditures in connection with the petitioner's personal business. Cash withdrawals from the pocketbook were recorded on the coal company's cash book. The amount of the withdrawal and the name of the recipient of the payment were indicated without designation of the purpose for which the payment was made. The revenue agent investigating *270 the petitioner's returns for the years in question went over each cancelled check from petitioner's bank accounts and the entries in the cash books of the coal company, and accepted the statements of the petitioner and his secretary as to the purposes for which the expenditures were made. Relying upon such information and other data obtained from third parties dealing with the petitioner, the contested deficiency was determined. The present record is unsatisfactory, confusing, and conflicting. The original petition alleges some 25 assignments of error. In an amended petition filed just prior to the hearing the amounts claimed in 9 assignments of error have been changed and 21 additional assignments of error have been added. The evidence in some instances is at variance with the petition, some assignments of error have been abandoned, and proof has been tendered on matters not assigned as error. The respondent contends that petitioner is now disavowing the information given to the revenue agent; is reclassifying certain deductions; and is not contesting other cash expenditures which the respondent determined in favor of the petitioner. The respondent's position possesses some merit. *271 Petitioner contends that since his returns reflected losses in excess of income he was not too concerned about correctly reporting all of his allowable deductions and did not know that operating losses could be carried back to prior years. Petitioner also says he was not aware of what the revenue agent was "driving at" when making an examination of his returns. It is the statutory duty of a taxpayer to make a full disclosure of his receipts and disbursements on his return, notwithstanding he may have no taxable income. Because of the lack of proper books and records petitioner's testimony is to a considerable extent based upon his present recollection as to the purposes for which large cash expenditures were made. In view of the conflicting and contradictory state of the record, we are not willing to accept all his testimony as entirely credible. While this Court is not an auditing body, a painstaking effort has been made to ascertain the additional expenditures of the petitioner in connection with the operation of his timber and lumber business during the years involved. The specific amounts determined are set forth in our findings of fact and it would serve no purpose to *272 repeat them here. The Court has made separate findings with respect to the petitioner's claims for travel and entertainment expenses in connection with his business. No records or vouchers covering such expenses were produced. Petitioner's testimony is based on his recollection and pure estimates. We are convinced that petitioner's claims are fanciful exaggeration. Under the doctrine of , we have made what, in our opinion, are reasonable allowances for such purposes. Although no error has been assigned, at the trial and on brief petitioner contends he is entitled to an additional deduction of $6,500 in 1947 for expenditures made in connection with his lumber business. The evidence respecting the purposes for which such amount was expended is nebulous, and the oral testimony is not supported by any schedule. The Court is unable to make any finding of fact in respect to such amount, even if such issue were properly before it. Petitioner, on brief, contends he is entitled to accrue as of December 31, 1948, the amount of $8,866.49 paid during the years 1949 and 1950 for expenses incurred in the years 1946, 1947, and 1948. The *273 record establishes the payment of the aggregate amount of $8,866.49 in the years 1949 and 1950. The respondent concedes that petitioner is entitled to accrue such business liabilities as he can establish were incurred prior to December 31, 1948. He also concedes that the claimed expenditures were not taken into consideration in making his determination. The only testimony in support of the fact that the payments were made for expenses incurred in the years 1946, 1947, and 1948 is that of the petitioner. No book records, vouchers, or invoices were produced in support of his testimony. Petitioner admitted that he was unable to fix the particular year the expense was incurred. Since the petitioner sustained substantial losses in the years 1947 and 1948, and is entitled to carry-backs to the taxable year 1946, the specific year the expense was incurred is unimportant. The timber and lumber business was commenced in 1946, so the liabilities could not have been incurred prior to that time. On this record we are satisfied that petitioner has established that the claimed expenditures were incurred during the years 1946, 1947, and 1948, and have so found. We hold, therefore, that petitioner *274 is entitled to accrue the amount of $8,866.49 as of December 31, 1948. Petitioner also contends that he overvalued his closing inventory as of December 31, 1948, by the amount of $12,483.34. On his 1948 return petitioner reported a closing inventory of $20,490 which amount the respondent accepted. Petitioner now contends that he assumed that the quality of the items shown on the inventory were of No. 1 quality, whereas they were No. 2 quality, and that the market value of the latter grade was less than one-half the value applied. The record shows that petitioner became aware of his error in May, 1949, shortly after filing his return. He filed no amended return, nor did he mention the error to the revenue agent when his returns were under investigation. The only testimony bearing upon the quality of the inventory is that of the petitioner. The petitioner kept the inventory of his timber and lumber business in a field warehouse which maintained records of the quantity, quality, and valuation of each type of wood, by classification, that was deposited in the field warehouse. Although petitioner was furnished monthly statements from the warehouse company, he did not retain them. In view *275 of the facts revealed by the record, we hold that petitioner has failed to sustain his burden of showing that the market value of his closing inventory as of December 31, 1948, was less than $20,490, and have so found as a fact. Petitioner also assigned as error the disallowance of part of the claimed deductions for the cost of timber cut with respect only to the years 1946 and 1947. No competent evidence was offered to establish such costs, and the Court is unable to make any finding of fact in respect thereto. Therefore, the respondent's determination as to petitioner's cost of timber cut is sustained. *
There remains for discussion the petitioner's contention as to the amounts alleged to have been expended in the years in question in the operation of a bird dog kennel. In the taxable year 1946 the petitioner claimed a loss of $990 from the operation of the kennel. The respondent disallowed the claimed deduction for lack of substantiation. In the years 1947 and 1948 petitioner claimed no deductions with respect to his kennel operation. He reported no income *276 in any of the years involved. Petitioner assigns as error the disallowance of the deduction claimed in 1946 and the failure to take into consideration expenditures alleged to have been made in 1947 and 1948. The record shows that in some prior years petitioner had earned profits from the purchase and sale of coon and bird dogs. Although petitioner earned no income from the operation of the kennel in any of the years in question, we are willing, on the basis of the facts shown, to credit his testimony that he was operating the kennel with the intention of earning profit. We are not willing to accept his oral testimony as to the amount expended in such operation. Petitioner, however, offered documentary evidence of certain expenditures and we have found that the amounts so substantiated constitute ordinary and necessary expenses of that business. No allowance has been made for petitioner's estimated expenditures for dog feed since the respondent has made substantial cash allowances under the heading "Feed" and it is not shown that such allowances did not cover dog feed. No deduction has been allowed for the year 1948. Petitioner testified he abandoned the operation in 1949. No supporting *277 data has been offered showing any expenditures for the year 1948. We think it reasonable, therefore, to infer that petitioner's recollection as to the year the kennel operation was abandoned is faulty. On the basis of the record the Court regards the amounts set forth in its findings with respect to the kennel operation to be reasonable. Decision will be entered under Rule 50. Footnotes
*. This paragraph was added by an official Order of the Tax Court, dated April 4, 1956, and signed by Judge LeMire.↩